Michael E. Quiat, Esq. (MEQ-8238)
USCHER, QUIAT, USCHER & RUSSO
A Professional Corporation
433 Hackensack Avenue, 2nd Floor
Hackensack, NJ 07601
Phone: (201) 342-7100
Fax:    (201) 342-1810
**Attorneys for Plaintiff, Kenneth Baker**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KENNETH BAKER, | Civil Action No. _____ |
| Plaintiff, | COMPLAINT |
| vs. | |
| SUN LIFE AND HEALTH INSURANCE COMPANY, | |
| Defendant. | |

Plaintiff, KENNETH BAKER, residing at 382 Holly Drive, Wyckoff, New Jersey 07481, by way of Complaint against the Defendant, alleges as follows:

1. Plaintiff is a resident of the State of New Jersey, County of Bergen, Township of Wyckoff, with a principal address of _____ : _____, Wyckoff, New Jersey 07481.

2. Defendant, Sun Life and Health Insurance Company (hereinafter referred to as "Defendant" or "Sun Life") is an insurance company organized and existing under the laws of the United States with a principal place of business at 175 Addison Road, Windsor, Connecticut 06095-0275. Upon information and belief, Defendant is registered and licensed to do business in the State of New Jersey.

1

3. Jurisdiction and venue are proper in this Court pursuant to 29 U.S.C. §1001 *et seq.*, 28 U.S.C. §1332 *et seq.* and 28 U.S.C. §1392 *et seq.*

## ESSENTIAL FACTS

4. Plaintiff, Kenneth Baker, is a 44-year-old father of two who, until his disability, was employed as a General Operations Manager by Yankee Payroll Services, Inc., which provides administrative services for multiple Dunkin' Donut locations. Plaintiff's position required him to oversee and otherwise manage the operations for eleven (11) Dunkin' Donut stores located in the northern New Jersey area. Plaintiff last worked in this capacity on November 20, 2007 due to severe debilitating Crohn's disease.

5. While employed at Yankee Payroll Service, Inc., Plaintiff became eligible to participate in G.E. Group Life Assurance Company Long Term Disability Plan effective July 1, 2004, Policy No. 454-2923-00 (hereinafter referred to as the "Policy" and attached hereto as **Exhibit A**).

6. Upon information and belief, the Defendant Sun Life is the successor-in-interest to G.E. Group Life Assurance Company in connection with the Policy.

7. Under the Policy, Plaintiff would be considered disabled if, because of an injury or sickness, he was "unable to perform all of the material duties of his regular occupation." After 24 months, the definition of disability under the Policy changes to insure Plaintiff if he was "unable to perform the duties of any occupation" for which he is reasonably suited by virtue of education, training or experience. The Policy also provides partial disability benefits.

8. Plaintiff's primary responsibilities as a General Operations Manager required him to directly supervise eleven (11) Dunkin' Donut store managers in various locations throughout Bergen County. As such, he was responsible for each store's quality control, production control,

scheduling and general oversight of customer service, as well as being responsible for the training, hiring and firing of employees. He was also responsible for moving inventory between stores, as needed, to keep the stores stocked, as well as managing the payroll and otherwise overseeing the finances of each of the eleven stores.

## PLAINTIFF'S DISABILITY

9. Plaintiff has a long well documented history of Crohn's disease, and symptoms of Crohn's disease including perirectal abscesses, diarrhea, active fistula and infections. Plaintiff has undergone numerous hospitalizations as a result of his chronic debilitating condition. Initially, Plaintiff was admitted to Mt. Sinai Medical Center on March 25, 2005 for treatment and drainage of sub mucosal abscess. Biopsies taken at that time reflected severely active proctitits.

10. Unfortunately, Plaintiff's condition deteriorated and on December 7, 2007, he underwent an incision and drainage of a perirectal abscess and the replacement of a seton stitch. In January 2008, Plaintiff underwent a ridged proctoscopy with drainage of an ischiorectal abscess.

11. On January 14, 2008, Plaintiff was re-admitted to Mt. Sinai Medical Center with fever and increased drainage. At that time, Plaintiff was suffering from a fistula and duodenitis. A CT scan showed recurrent perirectal abscesses, inflammation and active disease progression.

12. Plaintiff's condition continued to deteriorate and on June 13, 2008, he had a colon re-section with Hartmann closure of the rectum and a descending colostomy. Plaintiff was incapacitated for four (4) months thereafter, but his condition only continued to worsen.

13. In December 2008, Plaintiff underwent a colectomy at Mt. Sinai Medical Center which involved the total removal of his lower intestine, requiring permanent use of a colostomy bag. Unfortunately, Plaintiff also suffered a perforated ulcer and developed peritonitis. At that

time, Plaintiff went into septic shock and became comatose requiring intubation with a ventilator. Plaintiff remained in intensive care for approximately six (6) months and was not expected to survive. Brain scans and other tests during this period confirmed that Plaintiff suffered numerous seizures and strokes. Plaintiff finally returned home in July 2009.

14. As a result of the Plaintiff's life-threatening illnesses as set forth above, the Plaintiff has suffered permanent physical and cognitive impairments. His abdominal cavity has been surgically devastated and continues to require a colostomy bag which must be cleaned repeatedly throughout the day. Plaintiff's problem is compounded by the extensive scar tissue on his reconstructed abdomen, to which the colostomy bag will not adhere, causing chronic stool leakage.

15. In addition, the Plaintiff continues to suffer from significant cognitive limitations as a result of his prolonged state of unconsciousness and septic shock during which time he suffered several strokes and seizures.

16. As a result of Plaintiff's prolonged illnesses, he has been unable to return to his prior occupation or any other occupation since November 20, 2007, his last date of work.

## PLAINTIFF'S CLAIM FOR DISABILITY BENEFITS

17. Due to Plaintiff's illnesses, he applied for long term disability benefits with the Defendant which benefits were approved commencing February 18, 2008. On February 18, 2010, the definition of total disability changed to the "any occupation" definition as set forth in the Policy.

18. Nevertheless, the Plaintiff's benefits continued after February 18, 2010 because, as admitted by the Defendant in its letter to the Plaintiff dated May 12, 2010, the record clearly

4

established that Plaintiff was "unable to perform all of the material and substantial duties of <u>any</u> occupation."

19. As such, Plaintiff continued to receive from the Defendant disability benefits for the next two years.

20. During this period of time, Plaintiff applied for and was approved for Social Security disability benefits effective February 18, 2008.

## DEFENDANT'S TERMINATION OF BENEFITS

21. On March 6, 2012, Defendant terminated Plaintiff's claim for benefits. Defendant concluded:

> "There is insufficient proof to continue to substantiate a total disability. As such, you no longer qualify for LTD benefits under the group LTD policy issued to Yankee Payroll, Inc. Therefore, additional benefits have been denied."

22. The termination was contrary to the clear, objective medical evidence that the Plaintiff is, and continues to e, disabled within the meaning of the terms of the Policy.

23. The Plaintiff suffers not only from the consequences of his chronic Crohn's disease and the extensive surgical procedures which he endured in order to save his life, but also suffers from chronic neuropathy and cognitive deficits.

24. On June 3, 2011, Plaintiff was evaluated in a neuropsychological examination conducted by Dr. George Carnevale. Dr. Carnevale found that Plaintiff had cognitive impairments in the area of long term memory, verbal and visual memory and verbal associative learning difficulties. These impairments were attributed to the trauma resulting from the December 2008 surgery and complications thereafter, which resulted in his near death and a six-month stay in intensive care.

25. In order to support its denial of benefits, Defendant employed its hired gun, namely, William B. Barr, Ph. D., a notorious disability insurance defense IME provider.

26. Even though his testing revealed strong evidence of cognitive impairment, Dr. Barr disingenuously concluded that Plaintiff was not cognitively impaired. Dr. Barr conspicuously avoided the fact that the Plaintiff had passed all the validity tests administered by Dr. Barr himself!

27. To evaluate the probative value of Dr. Barr's report, Plaintiff's claim was evaluated by Dr. Kenneth Freundlich, a highly respected neuropsychologist. Dr. Freundlich reviewed Dr. Barr's findings and concluded that Dr. Barr's approach was contrary to the recognized practice in the field and reflected a desire to achieve a result, regardless of the evidence generated by the testing. More specifically, Dr. Freundlich found that since Dr. Barr performed standardized validity testing and Plaintiff passed those tests, Dr. Barr's test results must be taken as valid. Since those test results clearly prove the Plaintiff has significant cognitive impairments, Dr. Barr's opinion was invalid and not probative.

28. Therefore, Defendant's termination of the Plaintiff's long term disability benefits, which relied extensively on Dr. Barr's opinion, was wrongful and without basis in law or fact. The termination was against the substantial weight of the evidence and was arbitrary and capricious. Despite a plethora of evidence from Plaintiff's highly respected and credentialed physicians, which not only detail Plaintiff's serious impairments, but also fully rebutted the opinions and conclusions of Defendant's own medical experts, Defendant has refused to acknowledge the obvious, blindly relying on the self-serving opinions of its own hired expert, Dr. Barr. Such selective consideration of the medical evidence is a clear indication that

Defendant was serving its own financial interests, despite its fiduciary obligations, in terminating Plaintiff's claim.

29. Defendant has also failed to consider Plaintiff's own subjective complaints, and the objective evidence in support of those complaints, choosing to focus on only what served its own self-interest and ignoring the compelling evidence of disability from Plaintiff himself.

30. Defendant also failed to provide a full and fair review to Plaintiff during his administrative appeal and failed to give due consideration to the evidence provided by the Plaintiff's physicians, as well as the findings of the Social Security Administration.

31. Defendant also failed to consider whether the Plaintiff is entitled to any residual or partial benefits as provided under the Policy.

32. The medical and vocational support for the Defendant's denial of benefits under the Policy is both inconsistent and self-serving. It does not meet the "substantial evidence" requirement of the Courts in ERISA litigation. *Miller v. American Airlines*, 632 F. 3d 837 (3rd Cir. 2011). Moreover, Defendant's reliance on such evidence constitutes an abuse of discretion. *Culley v. Liberty Life Assurance Company of Boston,* 339 Fed. Appx. 240 (3rd Cir. 2009); *Hession v. Prudential*, 30 Fed. Appx. 650 (3rd Cir. 2008).

## AS AND FOR A FIRST CAUSE OF ACTION

33. Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs 1 through 32, as if fully set forth again herein.

34. The Plaintiff is totally disabled within the meaning of the terms of the Policy and as such is entitled to the disability benefits provided thereunder.

35. Defendant's denial of Plaintiff's administrative appeal was arbitrary and capricious and was not based on substantial evidence. Furthermore, it deprived the Plaintiff of his right to a "full and fair review".

36. By virtue of the foregoing, the Defendant has breached the terms of the subject Policy and has violated the requirements of the Employee Retirement Income Security Act, 29 USC §1132 (a)(1)(B), §502(a)(1)(B) and applicable regulations promulgated thereunder.

## AS AND FOR A SECOND CAUSE OF ACTION

37. Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs 1 through 36, as if fully set forth again herein.

38. The Plaintiff is partially or residually disabled within the meaning of the terms of the Policy and, as such, entitled to partial/residual disability benefits provided thereunder.

39. Plaintiff has suffered a substantial loss of income as a result of his disability.

40. Defendant's refusal to consider Plaintiff's eligibility for partial/residual disability benefits was arbitrary and capricious and was not based on substantial evidence. Furthermore, it deprived the Plaintiff of his right to a "full and fair review".

41. By virtue of the foregoing, the Defendant has breached the terms of the subject Policy and has violated the requirements of the Employee Retirement Income Security Act, 29 USC §1132 (a)(1)(B), §502(a)(1)(B) and applicable regulations promulgated thereunder.

## AS AND FOR A THIRD CAUSE OF ACTION

42. Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs 1 through 41, as if fully set forth again herein.

43. By virtue of the foregoing, the Defendant's denial of disability benefits constitutes a breach of Defendant's fiduciary duty owed to the Plaintiff under §502(a)(1)(B) and 29 USC

§1132(a)(2). Placing its own interest over that of the Plaintiff, Defendant has failed to justly and equitably administer this claim, causing Plaintiff compensable equitable damages.

WHEREFORE, Plaintiff demands that this Court enter judgment against the Defendant as follows:

1. Declaring Plaintiff totally disabled, or in the alternative, partially/residually disabled, within the meaning of G.E. Group Life Assurance Company Long Term Disability Plan, Policy No. 454-2923-00;

2. Ordering the Defendant to immediately place the Plaintiff back on claim for total disability benefits, or in the alternative, partial/residual disability benefits under the terms of the Policy, retroactive to March 6, 2012;

3. Awarding to Plaintiff his costs of suit, including reasonable attorneys' fees;

4. Awarding to Plaintiff interest on all unpaid benefits and waiving any and all premium charges accruing with respect to said Policy of insurance; and

5. Granting such other and further relief as this Court may deem just and equitable.

USCHER, QUIAT, USCHER & RUSSO
A Professional Corporation
433 Hackensack Avenue, 2nd Floor
Hackensack, NJ 07601
Phone: (201) 342-7100
Fax:   (201) 342-1810
***Attorneys for Plaintiff, Kenneth Baker***

Dated: March 8, 2013          By:     /s/ Michael E. Quiat
                                      MICHAEL E. QUIAT (MEQ-8238)

G:\Disability\Baker, Kenneth\Complaint.docx